(158 App. Div. 601.)

## In re HERBST.

(Supreme Court, Appellate Division, First Department. November 7, 1913.)

ATTORNEY AND CLIENT (§ 44*)—ATTORNEY—SUSPENSION—MISUSE OF FUNDS.

>   Respondent, as attorney for an insolvent firm, received $550 from the wives of the members thereof with which to effect a settlement with the firm creditors. He did not apply the money to such purpose but appropriated it to his own use and, after an assignment for the benefit of creditors had been made, received $3,000, a part of which he mingled with his own funds and also converted. After charges had been preferred against him, he succeeded in obtaining the money he had misappropriated and opened a separate bank account as assignee and deposited the money therein. He subsequently filed an account as assignee, in which he credited the amount received from the members' wives as money received by him as assignee. *Held*, that he was guilty of misconduct justifying suspension, notwithstanding his youth and inexperience.

>   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. § 44.*]

In the matter of disbarment proceedings against Charles H. Herbst. Suspended.

See, also, 156 App. Div. 896, 140 N. Y. Supp. 1123.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Henry B. Barnes, of New York City, for petitioner.

A. S. Gilbert, of New York City, for respondent.

INGRAHAM, P. J. The association of the bar of the city of New York presented charges of professional misconduct against the respondent. These charges were referred to the official referee, who has filed his report sustaining the charges. The charges contained two specifications. The first related to the appropriation of $550 delivered to the respondent by the wives of the members of the firm of Groveman & Kahn to be held by him for the purpose of effecting a settlement with the creditors of that firm, which the respondent did not apply to that purpose and appropriated it to his own use; and, second, that the respondent received, as assignee of Groveman & Kahn, the sum of $3,000, a part of which he mingled with his own funds and converted to his own use. It appeared that the respondent had been for some time prior to September, 1911, attorney for the firm of Groveman & Kahn; on March 6, 1911, that firm made an assignment to the respondent for the benefit of their creditors; that under that assignment the respondent took possession of the premises occupied by the assignors and for some time seems to have continued the business car-

ried on by them; that in the meantime the creditors of the firm agreed to accept 15 per cent. of their claim in discharge of the assignors, and it was understood that the respondent should continue the business carried on by the assignors to the end that, when the assignee should have realized out of the conduct of such business sufficient to pay the creditors 15 per cent. of their claim in cash, such payment be made and the assignment proceedings terminated. After this proposition of compromise had been accepted, and on or about the 27th day of September, 1911, the wives of the partners of Groveman & Kahn paid to the respondent $600, $50 of which was invested in the purchase of merchandise necessary to complete the business carried on by the assignors, and $550 was to be held by the assignors to be applied in making this settlement. The referee found that the respondent did not keep the funds that he received as assignee separate but deposited the amount to his own credit in the bank, a part of which he misappropriated and applied to his own individual use. When the respondent received this $600 from the wives of the assignors, he gave a receipt which stated that the money was "to be held in trust for the purpose of settlement in the Groveman-Kahn matter." It is quite clear that the respondent violated this trust; that he deposited this money to his own bank account in his bank and personally used a part of it, as he also did with a certain portion of money that he received as assignee in the conduct of the business which was carried on after the assignment. After these charges were made against him, he succeeded in obtaining the money which he had misappropriated and opened a separate account as assignee, in which the money was deposited. He subsequently filed his account as assignee in which he credited the amount received from the assignors' wives as money received by him as assignee, but this itself was a use of the money which, upon the evidence, he was not justified in making.

We have therefore a clear case of misappropriation of money held by an attorney for his client. The referee states the facts in his report, and it is not necessary to discuss them. It is sufficient to say that we approve and adopt the report. The respondent is a young man, inexperienced in matters of this kind. He was admitted to practice in June, 1906, and his only excuse that can be considered is that of youth and inexperience. It is hardly conceivable that one who has received the education and training which are required to justify his admission to the bar should claim ignorance of the fundamental principles of honesty and good faith which are required, not only of a lawyer, but of every one intrusted with money or property for a specific purpose. Here a young man was intrusted with money of his clients to be used by him for the discharge of their obligations to others, and he proceeds to mix it with his money in his bank and to apply a portion of it to his own use; and when charged with this misappropriation he does not even attempt to justify it by becoming a witness on his own behalf before the referee. Charges of this kind are becoming so frequent that we feel that a breach of such an obligation must be considered serious professional misconduct requiring disbarment, and that the excuse of youth and inexperience will not be received for a breach by an attorney of the obligation to treat the money of his clients that has

come into his hands as a sacred trust, not to be applied or used for his own purposes. The referee reports that:

"After long delay and under extreme pressure, the respondent made a partial restitution to Mrs. Groveman and Mrs. Kahn which constitutes no defense; * * * that the conduct of the respondent was reprehensible and tends to impair and defeat the administration of justice."

Under the circumstances of this case, we have concluded that, instead of the extreme penalty of disbarment, we will suspend the respondent from practice for two years, with the distinct intimation, however, that the excuse of youth and inexperience will not be received in the future as an excuse for misappropriation of moneys received by an attorney to be held by him for the use of his client.

Respondent suspended from practice for two years, with leave to apply for reinstatement at the expiration thereof upon proof that he has actually abstained from practice during that period and has otherwise properly conducted himself. All concur.